**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                  Plaintiff,

-against-

CHINA ENERGY SAVINGS TECHNOLOGY, INC., NEW SOLOMON CONSULTANTS, CHIU WING CHIU, LAI FUN SIM a/k/a Stella Sim, SUN LI, JUN TANG ZHAO,

                  Defendants,

-and-

AMICORP DEVELOPMENT LIMITED, ESSENCE CITY LIMITED, PRECISE POWER HOLDINGS LIMITED, YAN HONG ZHAO, AI QUN ZHONG, TUNG TSANG,

                  Relief Defendants.
----------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
06-CV-6402 (ADS)(AKT)

**APPEARANCES:**

**SECURITIES AND EXCHANGE COMMISSION**
Plaintiff
100 F Street, NE
Washington, DC 20549
    By:    Alan M. Lieberman, Esq.
             Patrick Feeney, Esq., of Counsel

**BRESSLER, AMERY & ROSS**
Attorneys for the Relief Defendants
17 State Street, 34th Floor
New York, New York 10004
    By:    David J. Libowsky, Esq. of Counsel

**NO APPEARANCE:**

Defendants China Energy Savings Technology, Inc., New Solomon Consultants, Chiu Wing Chiu, Lai Fun Sim a/k/a Stella Sim, Sun Li, and Jun Tang Zhao.

**SPATT, District J.**

The Securities and Exchange Commission ("SEC") commenced this action against China Energy Savings Technology, Inc. ("China Energy"), New Solomon Consultants, Chiu Wing Chiu, Lai Fun Sim a/k/a Stella Sim, Sun Li, and Jun Tang Zhao (collectively, the "Defendants"), Amicorp Development Limited, Essence City Limited, Precise Power Holdings Limited, Yan Hong Zhao, Ai Qun Zhong, and Tung Tsang (collectively, the "Relief Defendants") alleging violations of: (1) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 of the regulations, 17 C.F.R. § 240.10b-5; and (2) Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), (c).

Presently there are two motions before the Court: (1) the SEC's motion for a preliminary injunction enjoining the Relief Defendants from transferring or disposing of any proceeds of China Energy stock currently in their possession pending the resolution of this action; and (2) the Relief Defendants' cross-motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to transfer the case to the Southern

2

District of Florida pursuant to 28 U.S.C. § 1404(a).  The Defendants did not answer or otherwise move with respect to the complaint.

I.      BACKGROUND

The SEC's claims of securities violations arise out of an alleged "pump and dump" scheme related to the sale of China Energy Stock.  The phrase "pump and dump" refers to a scheme by which someone causes the price of a stock to be artificially inflated, and then sells the stock when it is highly valued.  The purchasers who bought the stock at a high price are typically left with worthless or much lower-valued securities when the price of the stock returns to its actual value.

In this case, the SEC alleges that the Defendants engaged in this type of fraudulent scheme with respect to the stock of China Energy.  The SEC alleges that the Defendants artificially increased the price of China Energy stock through a series of sham transactions and through the dissemination of false and misleading information.  At a time when the price of China Energy stock had risen as a result of the defendants' alleged manipulation, they sold millions of shares of the stock at an artificially inflated price.  The sale of this stock was effectuated through the use of four brokerage accounts at Capital Growth Financial LLC (the "Capital Growth Accounts").  The Capital Growth Accounts are held in the names of the Relief Defendants, and are alleged to have been used for no other purpose than to facilitate the sale of China Energy stock.  According to the SEC, only a portion of the proceeds

from the Defendants' sale of China Energy stock remains in these accounts, and it is these funds that the SEC seeks to freeze pending the resolution of this action on the merits.

The Relief Defendants Amicorp Development Ltd., Essence City Ltd., and Precise Power Holdings Ltd. are British Virgin Island companies located in Hong Kong.  The Relief Defendant Yan Hong Zhao is a resident of Hong Kong or the People's Republic of China.  The Relief Defendants Ai Qun Zhong and Tung Tsang are residents of Hong Kong.

## II. DISCUSSION

### A. Rule 12(b)(2)

For purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving that the Court has personal jurisdiction over the defendants.  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  The precise burden borne by the plaintiff depends on the procedural posture of the case.  Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion by "pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction."  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194,

4

197 (2d Cir. 1990)). No evidentiary hearing or factual determination is required for this purpose. Credit Lyonnais Sec. (U.S.A.), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).

The plaintiff must provide averments of fact that, "if credited by the trier, would suffice to establish jurisdiction over the defendant." Ball, 902 F.2d at 197. When considering various affidavits and sworn declarations, the Court must construe them in the "light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a contravening presentation to the moving party." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80.

### B.  As to Personal Jurisdiction over the Relief Defendants

The SEC's claims are brought under federal securities laws that authorize world-wide service of process, and permit the Court to exercise jurisdiction to the full extent that the Due Process Clause of the Fifth Amendment permits. SEC v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990); Chew v. Dietrich, 143 F.3d 24, 30 (2d Cir. 1998); SEC v. Alexander, No. 00-7290, 2003 WL 21196852, at *2 (S.D.N.Y. May 20, 2003); SEC v. Softpoint, Inc., No. 95-2951, 2001 WL 43611, at **2-6 (S.D.N.Y. Jan. 18, 2001). Due process "standards permit the exercise of jurisdiction over a defendants 'whose conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Unifund, 910 F.2d at 1033

(quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)).

In general, Courts employ a two-part test to determine whether the exercise of jurisdiction over a particular defendant comports with due process: (1) the defendant must have minimum contacts with the forum; and (2) the exercise of jurisdiction under the circumstances must be reasonable. Softpoint, 2001 WL 43611 **2-6. In cases such as this, that are premised on violations of federal statutes, the relevant forum for the contacts analysis is the United States. Alexander, 2003 WL 21196852, at *2; SEC v. Gonzalez de Castilla, No. 01-3999, 2001 WL 940560, at *3 n.2 (S.D.N.Y. Aug. 20, 2001). The Second Circuit has stated in federal securities actions that a foreign defendant's contacts with the United States are sufficient where his or her actions abroad have "caused consequences" here, and the person sought to be charged knew or had good reason to know that this conduct would have such an effect. Unifund SAL, 910 F.2d at 1033 (citations omitted); Softpoint, 2001 WL 43611 at *5 (stating that the test for whether a court has personal jurisdiction over a foreign defendant in an action under the securities laws is whether the defendant's activities had an "unmistakably foreseeable effect within the United States" and "could be reasonably expected to be visited upon the United States shareholders.") (citation omitted).

Applying these standards here, the Court finds that the SEC has satisfied its pre-discovery burden to establish personal jurisdictional over the Relief Defendants.

In the complaint, the SEC alleges that the Relief Defendants acted as straw-parties in order to enable the defendants to carry out their fraud. In the course of these activities, the SEC alleges that the Relief Defendants made misrepresentations to the SEC that they received their stock as compensation for consulting services to China Energy, when in fact the shares come from an entity controlled by the defendants for no value.

The declarations, affidavits, and documents submitted not only by the SEC, but also by the Relief Defendants themselves, supports the following facts: (1) China Energy is a United States corporation, incorporated in Nevada, whose stock is traded on a United States stock exchange; (2) the Relief Defendants opened brokerage accounts in Florida specifically for the purpose of selling China Energy Stock; (3) the Relief Defendants filed documents with the SEC for the purpose of enabling them to sell their shares of China Energy Stock; and (4) a total of 1,584,770 shares of China Energy shares were deposited into the Florida brokerage accounts and sold between the months of October 2005 and February 2006 generating approximately $9.5 million in proceeds. Also, the SEC has submitted evidence that the documents that the Relief Defendants filed with the SEC contained false information.

In the Court's view, these affirmative acts taken by the Relief Defendants to enable them to sell the China Energy stock qualify as the type of "purposeful availment" of this forum necessary for the exercise of personal jurisdiction. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567,

62 L. Ed. 2d 490.  Assuming the truth of the SEC's allegations, the establishment of the Capital Growth Accounts, the submission of false information to the SEC, and the sale of the China Energy stock at an artificially inflated price would have an "unmistakably foreseeable" effect in the United States, most directly upon those stock purchasers who were defrauded by the alleged "pump and dump" scheme.  Unifund SAL, 910 F.2d at 1033; cf. Alexander, 2003 WL 21196852; Gonzalez de Castilla, 2001 WL 940560, at *5; SEC v. Euro Security Fund, Coim, SA, No. 98-7347, 1999 WL 76801 (S.D.N.Y. Feb. 17, 1999).  Accordingly, the SEC has established that the Relief Defendants had sufficient contact with the United States so that they could expect to be sued here.

The second aspect of the two-part test for personal jurisdiction, namely whether it would be reasonable to require the defendants to litigate in this forum, requires that the Court consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive policy.

Gonzalez de Castilla, 2001 WL 940560, at *3 (quoting Metro. Life Ins. Co. v. Robertson-Cece Corp., 84 F.3d 560, 568 (2d Cir. 1996)).  "This prong of the inquiry rarely defeats jurisdiction where a defendant has sufficient forum contacts, and is largely academic in non-diversity cases brought under a federal law which provides

8

for nationwide service of process." Softpoint, Inc., 2001 WL 43611, at *5 (citing Asahi Metal Indus., Co. v. Superior Court, 480 U.S. 102, 116, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (Brennan, J. concurring)).

The only "reasonableness" factor that weighs against jurisdiction in this case is the fact of the inconvenience on the Relief Defendants as a result of their location in Hong Kong or the People's Republic of China. However, the Relief Defendants have made no showing that litigation in the United States would be especially difficult for them. The inconvenience of litigating in a distant forum, standing alone, is insufficient to defeat jurisdiction when balanced against the strong interest the United States has in enforcing its securities laws. This is particularly true considering the effect that modern methods of communication and travel have had in somewhat reducing the burden on foreign litigants, and the fact that the Relief Defendants have New York Counsel. See Gonzalez de Castilla, 2001 WL 940560, at *6; Softpoint, 2001 WL 43611, at *6; Alexander, 2003 WL 21196852, at **3-4; SEC v. Euro Security Fund, Coim SA, No. 98-7347, 1999 WL 76801, at *4 (S.D.N.Y. Feb. 17, 1999). Thus, the Court holds that the exercise of personal jurisdiction over the Relief Defendants is reasonable and appropriate in this case. Accordingly, the Relief Defendants' motion to dismiss the complaint for lack of personal jurisdiction is denied.

### C. Venue

A district court may transfer venue, in the interest of justice, "for the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The movant bears the burden of establishing the propriety of transfer by clear and convincing evidence. Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (citing Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950)); see also Hernandez v. Blackbird Holdings, Inc., No. 01 Civ. 4561, 2002 WL 265130, at *1 (S.D.N.Y. Feb. 25, 2002). Furthermore, the movant must support its motion with a detailed factual affidavit. See Kiss My Face Corp. v. Bunting, No. 02 Civ. 2645, 2003 WL 22244587, *1 (S.D.N.Y. Sept. 30, 2003); Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc., No. 00 Civ. 1971, 2000 WL 1290585, *6 (S.D.N.Y. Sept. 13, 2000).

The Relief Defendants assert that a transfer of venue is appropriate because: (1) the claims against them could have been brought in the Southern District of Florida; (2) the operative facts, such as Capital Growth's receipt of process of the orders to sell the China Energy stock, occurred in the Southern District of Florida; (3) the Capital Growth Accounts and the account representative, Steven Cao, are located in Florida; (4) the documents relating to the transactions are located there; and (5) for the convenience of other, unidentified witnesses.

Having reviewed these arguments and the SEC's response, the Court concludes that a transfer is not warranted in this case. The Relief Defendants have failed to

establish by clear and convincing evidence that a trial of this case in the Southern District of Florida would be more convenient than in the Eastern District of New York.

Although some facts related to the elements of the alleged fraud occurred in Florida, the SEC alleges that operative facts of the alleged fraud also occurred in New York and other states. Nor does the location in Florida of documentation relating to the sales of the shares of China Energy stock weigh in favor of transfer. With reasonable certainty, any of these documents can easily be copied and shipped, or scanned and transmitted electronically to New York quickly with little cost and relative ease. Oubre v. Clinical Supplies Mgmt. Inc., No. 05-2062, 2005 WL 3077654, at *3 (S.D.N.Y. Nov. 17, 2005).

Finally, the Relief Defendants state that there are witnesses located in Florida for whom a Florida trial would be more convenient. However, the Relief Defendants do not identify any of these witnesses by name or offer any facts establishing that any Florida-based witnesses could not testify in New York. In fact, Steven Cao is the only Florida-based witness that has been identified in this case. Cao is a witness for the plaintiff and has submitted a declaration in which he states that he is willing and able to appear in the Eastern District of New York to provide testimony in this matter.

In sum, the Relief Defendants have failed to make a "clear cut and convincing showing" that the balance of convenience weighs strongly in favor of the Southern

District of Florida sufficient to overcome the plaintiff's choice of forum.  See Oubre,

2005 WL 3077654, at *6 (citation omitted).  Accordingly, the Relief Defendants'

motion to transfer this case to the Southern District of Florida is denied.

### D. As to the Preliminary Injunction

The SEC's motion requests that the Court issue a preliminary injunction

freezing the proceeds of the sale of China Energy stock that are currently held in the

Capital Growth Accounts pending the resolution of this action on the merits.  Section

20 of the Securities Act provides:

> Whenever it shall appear to the Commission that any person is
> engaged or about to engage in any acts or practices which constitute
> or will constitute a violation of the provisions of this subchapter, . . .
> the Commission may, in its discretion, bring an ation in any district
> court . . . and upon a proper showing, a permanent or temporary
> injunction or restraining order shall be granted without bond.

15 U.S.C. § 77t(b).

> A preliminary injunction enjoining violations of the securities laws
> is appropriate if the SEC makes a substantial showing of likelihood
> of success as to both a current violation and the risk of repetition.  An
> asset freeze requires a lesser showing; the SEC must establish only
> that it is likely to succeed on the merits.  Unlike a private litigant, the
> SEC need not show risk of irreparable injury.

SEC v. Cavanagh, 155 F.3d 129, 133 (2d Cir. 1998) (citing Unifund, 910 F.2d at

1036-41); SEC. v. Heden, 51 F. Supp. 2d 296, 298 (S.D.N.Y 1999).

"A freeze order can apply to non-parties, such as relief defendants allegedly

holding the funds of defendants."  Heden, 51 F. Supp. 2d at 299 (citation omitted).

Also, a freeze order could operate as to assets that are not traceable to illegal activity. SEC v. Grossman, 887 F. Supp. 649, 661 (S.D.N.Y. 1995), aff'd, 101 F.3d 109 (2d Cir. 1996). "Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person (1) has received ill-gotten gains; and (2) does not have a legitimate claim to those funds." Cavanagh, 155 F.3d at 136.

  The Relief Defendants "categorically deny" that the proceeds of the China Energy stock sale in the Capital Growth Accounts are proceeds of the defendants' fraud, and argue that they have a legitimate claim to the funds that remain in the Capital Growth Accounts because they received the underlying shares of stock on a bona fide bases as consideration for the sale of their shares of stock in another company. On the other hand, the SEC produced evidence that it claims establishes that the funds in the Capital Growth Accounts are directly traceable to the defendants' alleged fraud, and that the Relief Defendants received their shares of China Energy stock in sham transactions in furtherance of the "pump and dump" scheme. Based on this apparent factual dispute, the Court would be inclined to refer this matter to the United States Magistrate Judge for a hearing on these issues, even though both parties stated that no such hearing was necessary.

  However, the only factual support for the Relief Defendants' position is found in the declarations of Yan Hong Zhao, Aiqun Zhong, Tsang Tung, and Jun-Tang Zhao.

13

Although these declarations are in English, none of these individuals speak or write English. Each declaration contains a footnote stating the following: "While I do not speak or write English, this Declaration has been translated into Chinese by the person whom we hired to handle communications. Thus, I fully understand the contents of this Declaration and can affirm the truthfulness of same." According to statements made by the Relief Defendants' counsel at a hearing before the Court on January 5, 2007: (1) counsel prepared the declarations in English; (2) counsel does not know if there is or was a written Chinese translation of the English version; and (3) counsel does not know the identity of the person who purportedly translated the declarations from English to Chinese. Because of the manner in which these declarations were executed, the SEC requests that the Court not consider them.

The SEC has provided two cases to the Court in support of its argument that the declarations should be stricken. Jack v. Trans World Airlines, Inc., 854 F. Supp. 654, 659 (N.D. Cal. 1994); Tomashevsky v. Komori Printing Mach., 715 F. Supp. 1562, 1563 (S.D. Fla. 1989); see also Fed. R. Evid. 604 ("An interpreter is subject to the provisions of these rules relating to qualifications as an expert and the administration of an oath or affirmation to make a true translation."). In Jack, the court ordered numerous documents stricken from record. Although the plaintiffs did submit, at the court's direction, a statement from a translator stating that the translations were true and correct, the translator's statement was not sworn; did not

describe the maker's qualifications or expertise regarding language translation; did not state whether the maker did the translations; and did not explain the circumstances under which the affiants signed the affidavits. The court concluded that the plaintiffs failed to lay a proper foundation for the admission of the translated affidavits. Jack, 854 F. Supp. at 659. In Tomashevsky a translated affidavit that stated on its face that the affiant did not speak English was stricken because there was no interpreter's certificate attached to the affidavit. Tomashevsky, 715 F. Supp. at 1563.

The Court finds that these cases are persuasive. Thus, the translated declarations submitted in opposition to the SEC's motion for a preliminary injunction will not be considered because the Relief Defendants failed to present evidence of the accuracy of the translations. Absent the Court's consideration of the statements in those declarations, the Relief Defendants cannot rebut the substantial evidence submitted by the SEC that the Capital Growth Accounts contain monies that are the proceeds of the defendants' fraud and that the Relief Defendants have no legitimate claim to that money. However, rather than grant the preliminary injunction at this time, the Court will permit the Relief Defendants one additional opportunity to establish the authenticity of their affidavits. See Jack, 854 F. Supp. at 659; Tomashevsky, 715 F. Supp. at 1563.

The Relief Defendants are directed to submit sufficient evidence regarding the accuracy of the translated declarations and the qualifications of the translator. If the

Relief Defendants do not submit this information within thirty days of the date of this order, the Court will grant the preliminary injunction. If the Relief Defendants submit this information within thirty days, and the Court is satisfied regarding the evidence of accuracy and authenticity of the translations, the Court will consider referring the motion for a preliminary injunction to the United States Magistrate Judge for a hearing.

### III.     CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Relief Defendants' motion to dismiss for lack of personal jurisdiction is denied; and it is further

**ORDERED**, that the Relief Defendants' motion to transfer this case to the Southern District of Florida is denied; and it is further

**ORDERED**, that the Court reserves decision on the SEC's motion for a preliminary injunction enjoining the Relief Defendants from transferring or disposing of any proceeds of the sale of China Energy stock currently in their possession, pending the Relief Defendants' submission of documentation regarding the accuracy and authenticity of the declarations of Yan Hong Zhao, Aiqun Zhong, Tsang Tung, and Jun-Tang Zhao within thirty days of the date of this order.

**SO ORDERED**.

Dated: Central Islip, New York
       March 19, 2007

                                             _/s/ Arthur D. Spatt_
                                             ARTHUR D. SPATT
                                             United States District Judge