UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                       Plaintiff,

            -against-

CHINA ENERGY SAVINGS TECHNOLOGY,
INC., NEW SOLOMON CONSULTANTS, CHIU
WING CHIU, LAI FUN SIM a/k/a Stella Sim, SUN
LI, JUN TANG ZHAO,

                       Defendants,

            -and-

AMICORP DEVELOPMENT LIMITED,
ESSENCE CITY LIMITED, PRECISE POWER
HOLDINGS LIMITED, YAN HONG ZHAO, AI
QUN ZHONG, TUNG TSANG,

                       Relief Defendants.
-------------------------------------------------------------X

**ORDER**
06-CV-6402 (ADS)(AKT)

**APPEARANCES:**

**SECURITIES AND EXCHANGE COMMISSION**
Attorneys for the Plaintiff
100 F Street, NE
Washington, DC 20549
       By:    Alan M. Lieberman, Esq.
               Patrick Feeney, Esq., of Counsel

**BRESSLER, AMERY & ROSS**
Attorneys for the Relief Defendants
17 State Street, 34th Floor
New York, New York 10004
       By:    David J. Libowsky, Esq. of Counsel

**NO APPEARANCE:**

Defendant China Energy Savings Technology, Inc., New Solomon Consultants, Chiu Wing Chiu, Lai Fun Sim a/k/a Stella Sim, Sun Li, and Jun Tang Zhao.

**SPATT, District J.**

## I. BACKGROUND

The Securities and Exchange Commission ("SEC") commenced this action against China Energy Savings Technology, Inc. ("China Energy"), New Solomon Consultants, Chiu Wing Chiu, Lai Fun Sim a/k/a Stella Sim, Sun Li, and Jun Tang Zhao (collectively, the "Defendants") alleging violations of: (1) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 of the regulations, 17 C.F.R. § 240.10b-5; and (2) Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), (c) arising out of an alleged "pump and dump" scheme related to the sale of China Energy stock. The phrase "pump and dump" refers to a scheme by which someone causes the price of a stock to be artificially inflated, and then sells the stock when it is highly valued. The purchasers who bought the stock at a high price are typically left with worthless or much lower-valued securities when the price of the stock returns to its actual value.

Defendants China Energy, New Solomon, Chiu, Sim, Li, and J. Zhao have defaulted in this action and judgment was entered against them on the basis of that default, with all of the well-pleaded allegations in the Plaintiff's complaint deemed

true.  The scheme was fully described in a Report and Recommendation issued by United States Magistrate Judge A. Kathleen Tomlinson on March 13, 2008 following an inquest on damages.  Judge Tomlinson explained that:

> China Energy was formed in August 2004 when a Nevada shell corporation, Rim Holdings, Inc., owned by defendants Chiu and Sim, was renamed "China Energy."  China Energy's business was developing, marketing, distributing and manufacturing energy saving products for use in commercial and industrial settings.
> Defendant New Solomon is a British Virgin Island corporation with its principal place of business in Hong Kong.  Defendant Chiu Wing Chiu, a resident of Hong Kong or the People's Republic of China, was the sole officer and director of New Solomon.  Defendant Chiu exercised control over New Solomon and China Energy.  Defendant Lai Fun Sim a/k/a Stella Sim, is a resident of Hong Kong.  Defendant Sim was corporate secretary and a director of China Energy, and the sole officer and director of Eurofaith Holdings, Inc. ("Eurofaith"), a holding company controlled and directed by Defendant Chiu.
> Defendant Sun Li is a resident of Hong Kong or the People's Republic of China.  Sun Li was the Chief Executive Officer of China Energy and had a controlling interest in New Solomon.  Defendant Jung Tang Zhao is a resident of Hong Kong and the president of Relief Defendant Precise Power.  Defendant J. Zhao is also alleged to be an employee of China Energy.
> Between June 2004 and July 2005, Chiu and Sim orchestrated China Energy's acquisition of Starway Management Limited ("Starway").  Starway's sole asset was a Chinese company that manufactures and markets energy related products.  China Energy purchased this asset worth an estimated $20 million in exchange for 22 million shares of China Energy (then valued at $250 million).  According to the SEC, these shares were transferred to entities controlled by Chiu.  As a result, Chiu gained control of 65% of China Energy's outstanding common stock.
> The SEC alleges that Defendants artificially increased the price of China Energy stock through a series of sham transactions.  China Energy's stock price rose from $12 to $28 as a result of these activities.  Between November 24 and December 9, 2004,

3

> Defendants' trading represented an average of 56% of the buy-side volume. During the first ten days of the pump, Defendants' buying activity represented 70% of the volume, and on three days during the period, Defendants accounted for 90% of the buy-side volume. At a time when the price of China Energy stock had risen as a result of Defendants' alleged manipulation, they sold millions of shares of the stock at an artificially inflated price.
>
> The sale of this stock was effectuated in part through the use of brokerage accounts at Capital Growth Financial LLC ("Capital Growth"). The Capital Growth accounts are held in the names of the Relief Defendants, Goalwise and Du Li Qiang, and are alleged to have been used for no other purpose than to facilitate the sale of China Energy stock. The SEC identifies the accounts of Goalwise and Du Li Qiang as accounts under the control of the Defendants and seeks disgorgement of the proceeds of sales effectuated through those accounts as well as the accounts held in the names of the Relief Defendants.

Report and Recommendation, March 13, 2008 [DE 91] at 2–4.

In its complaint, the SEC also named Amicorp Development Limited, Essence City Limited, Precise Power Holdings Limited, Yan Hong Zhao, Ai Qun Zhong, and Tung Tsang (collectively, the "Relief Defendants") as Relief Defendants, alleging that proceeds of the scheme were held in the names of the Relief Defendants. On December 4, 2006, a temporary restraining order ("TRO") was entered freezing the assets of the Defendants and the Relief Defendants. On January 10, 2007, the Court extended the TRO as to all Relief Defendants, limiting the asset freeze to the disposition, transfer, or dissipation of any proceeds from the sale of China Energy stock.

The SEC then moved for a preliminary injunction enjoining the Relief Defendants from transferring or disposing of any proceeds of China Energy stock currently in their possession pending resolution of this action. Oral argument on the motion was heard on January 5, 2007. The Relief Defendants denied that the proceeds of the China Energy stock sale in the Capital Growth accounts in their names are proceeds of the defendants' fraud. The Relief Defendants argued that they have a legitimate claim to the funds that remain in the Capital Growth Accounts because they received the underlying shares of stock on a bona fide basis as consideration for the sale of their shares of stock in Starway. However, the SEC produced evidence that it contended conclusively established that the funds in the Capital Growth Accounts are directly traceable to the defendants' alleged fraud.

On March 19, 2007 the Court issued a Memorandum and Decision finding that a factual dispute existed as to whether the Relief Defendants had a legitimate claim to the funds remaining in the Capital Growth Accounts. Specifically, the only factual support for the Relief Defendants' position was found in the individual declarations of, Jun Tang Zhao, Ai Qun Zhong, Tsang Tung, and Yan Hong Zhao executed in December 2006. Although these declarations were in English, none of these individuals speak or write English and the accuracy of their translation was not clear. As a result, the SEC moved to strike these declarations and the Court agreed. However, rather than issuing a preliminary injunction at that time, the Court allowed

the Relief Defendants time to submit additional evidence regarding the accuracy of the translated declarations.

On May 2, 2007, the Relief Defendants submitted newly signed Chinese translations of the English declarations and a "Second Joint Declaration." As a result, the Court referred the matter to United States Magistrate Judge A. Kathleen Tomlinson for the purpose of resolving all questions of fact and law regarding the Plaintiff's motion for a preliminary injunction and to issue a Report and Recommendation to that effect. Judge Tomlinson conducted an evidentiary hearing in the matter on August 9, 2007.

On March 31, 2008, the Court adopted Judge Tomlinson's Report and Recommendation in full and ordered the assets of the Relief Defendants frozen to the extent that they were proceeds from the sales of China Energy stock, to remain in effect pending final resolution of this action. In her Report and Recommendation, Judge Tomlinson explained that the SEC alleged that the Relief Defendants were mere nominees of defendants Chiu and Sim.

Judge Tomlinson noted that the corporate Relief Defendants, Amicorp, Essence City, and Precise Power are British Virgin Island companies located in Hong Kong. Amicorp, founded in September 2005, opened a brokerage account at Capital Growth in January 2006. The account documents state that Relief Defendant Zhong **is** designated as the sole officer and the mailing address is the same address as New

Solomon and China Energy. Relief Defendant Essence City opened an account at Capital Growth in September 2005, designating Relief Defendant Tung as the sole officer and director and its mailing address was a residential address used by Defendant Chiu. Finally, in December of 2005, Precise Power opened a Capital Growth account, designating Defendant J. Zhao as the sole officer and also using a residential address used by Defendant Chiu.

In addition to other evidence submitted to establish the relationship between Chiu and the Relief Defendants, the SEC obtained the sworn statement of Steven Cao, the Capital Growth account representative for the Essence City, Precise Power, Y. Zhao, Amicorp, and New Solomon accounts. Cao stated that he was often unable to contact the Relief Defendants directly, but could contact them through Chiu only.

Judge Tomlinson also reviewed the declarations submitted by the individual Relief Defendants in opposition to the asset freeze. In the first set of declarations submitted by J. Zhao, Tung Tsang, Zhong, and Y. Zhao in December of 2006, these individuals stated that they were shareholders of Shenzhen Dicken Industrial Development Limited ("Shenzhen Dicken"), a company based in the People's Republic of China that manufactured and marketed energy related products and was subsequently merged into China Energy. According to the First Declarations, the principals of Shenzhen Dicken formed a holding company known as Starway Management Limited ("Starway"). The shares of Shenzhen Dicken held by Y. Zhao,

7

Tung Tsang, Zhong, and J. Zhao were transferred to Starway and in June of 2004, and these individuals later received shares of China Energy in exchange for their interest in Starway. Further, the first set of declarations stated that these individuals had no "relationship of any kind with Chiu." The "Second Joint Declaration" of J. Zhao, Y. Zhao, Zhong, Tsang Tung purported to clarify the first set of declarations and stated that what they "meant to convey was the lack of a relationship with Mr. Chiu on our part in the context only of Mr. Chiu's alleged involvement in the wrongful activities alleged in the SEC's complaint." A "Third Joint Declaration" submitted to Judge Tomlinson stated instead that the shares in China Energy were received for services provided to the entity Eurofaith by J. Zhao and Zhong.

Judge Tomlinson found that the Relief Defendants, though denying that the proceeds of the China Energy stock sale in the Capital Growth accounts are proceeds of the Defendant's fraud, failed to provide a shred of documentary evidence to support their assertion that the shares held in the accounts were in fact issued as compensation. Judge Tomlinson noted that the lack of evidence was compounded by the shifting stories set forth in the declarations, the last of which claimed that the shares were received as compensation for services rendered to Eurofaith. Judge Tomlinson further noted that this latest account of how the transfer of shares transpired was inconsistent with a Form S-8 filed with the SEC by China Energy, in which China Energy claimed to have issued the shares in exchange for services rendered to it, rather than rendered

to Eurofaith. Finally, Judge Tomlinson found that even if the Relief Defendants were able to establish that the shares were received for services rendered to Eurofaith, they had no legitimate claim to the proceeds in issue because only present, rather than past, consideration could constitute valid consideration for the shares.

Presently before the Court is the SEC's motion for summary judgment against the Relief Defendants, seeking disgorgement of all funds held in the Relief Defendants' Capital Growth accounts. The SEC notes that the evidence of record has not changed since the Court adopted Judge Tomlinson's March 18, 2008 Report and Recommendation. In addition, the SEC points out that although the corporate Relief Defendants, Amicorp, Essence City, and Precise Power submitted a Rule 56.1 Counter-Statement of Undisputed Material Fact, the individual Relief Defendants, Y. Zhao, Zhong, and Tung Tsang, did not. In addition, only the corporate Relief Defendants have opposed the motion.

## II.  DISCUSSION

*A.*  *Summary Judgment Standard*

Summary judgment is proper only where no genuine issue of material fact exists to present to the trier of fact. Rule 56 of the Federal Rules of Civil Procedure states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party has offered evidence that no genuine issue of material fact remains, the burden shifts to the non-moving party to provide evidence that a genuine, triable issue remains. *Id.* at 250. It is well-settled that the non-moving party cannot defeat summary judgment with nothing more than unsupported assertions or the allegations in its pleadings. Fed. R. Civ. P. 56(e); *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202; *Vann v. City of N.Y.*, 72 F.3d 1040, 1048–49 (2d Cir. 1995).

Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see Donahue v. Windsor Locks Board of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

### B. *Requirements for Recovering Assets from a Relief Defendant*

District courts are authorized to order disgorgement from parties who, though not directly involved, profit from a fraud and have no just claim to their profits. *SEC v. Cavanagh (Cananagh IV)*, 445 F.3d 105, 118 (2d Cir. 2006); *see also SEC v. Egan*, 856 F. Supp. 401, 402 (N.D. Ill. 1993) ("To be sure, Relief Defendants may not have been directly culpable in the securities violations, but what the SEC seeks to have them disgorge are the benefits that they derived from the violations by the culpable defendants.").

"Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *SEC v. Cavanagh (Cavangh II)*, 155 F.3d 129, 136 (2d Cir. 1998) (citing *SEC v. Colello*, 139

F.3d 674, 677 (9th Cir. 1998)). In *Cavanagh II*, the court found receipt of ill-gotten funds where the relief defendant did not dispute that she received proceeds from the sale of the stock by the accused wrongdoer. *Id.* Further, the court found that neither the relief defendant nor her husband had a legitimate claim to the funds because they gave no consideration for the shares and instead received them as a gift. *Id.* at 137; *see also SEC v. Cavanagh*, No. 98 Civ. 1818, 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004) ("When there has been no consideration given for the receipt of the ill-gotten gains, there is no legitimate claim to the funds and a relief defendant must return the proceeds.").

In opposition, the corporate Relief Defendants assert that the SEC has not shown any facts demonstrating that they failed to give adequate consideration in exchange for their China Energy shares or that they have knowledge of or participated in the alleged wrongful conduct of the liability defendants. The corporate Relief Defendants have thus returned to the position that their shares of China Energy were acquired as consideration for the sale of their shares of Starway in a *bona fide* reverse merger/takeover transaction.

At the outset, the Court notes that knowledge of the alleged fraud is not a requirement for the relief that the SEC seeks as the rule regarding recovery from relief defendants extends to parties innocent of any wrongdoing. Further, the relief defendants have submitted no new evidence in support of their assertions that the

exchange of China Energy shares was supported by adequate consideration. The

corporate Relief Defendants made the following admissions in response to the SEC's

Local Rule 56.1 statement of facts:

> On or about September 8, 2005, a brokerage account was opened at Capital Growth Financial in the name of Relief Defendant Y. Zhao. The mailing address on the Y. Zhao Account is a residential address used by Defendant Chiu in the records of the Hong Kong Companies Registry.
> On or about September 9, 2005, a brokerage account was opened at Capital Growth Financial in the name of Relied Defendant Essence City. The account opening documents designate Relief Defendant Tung Tsang as the sole officer and director of Essence City. The mailing address on the Essence City Account is a residential address used by Chiu in the records of the Hong Kong Companies Registry.
> On or about December 19, 2005, a brokerage account was opened at Capital Growth Financial in the name of Relief Defendant Precise Power. The account opening documents designate Defendant J. Zhao as the sole officer of Precise Power. The mailing address on the Precise Power Account is a residential address used by Chiu in the records of the Hon Kong Companies Registry.
> On or about January 18, 2006, a brokerage account was opened at Capital Growth Financial in the name of Relief Defendant Amicorp. The account opening documents for the Amicorp Account designate Relief Defendant A. Zhong as the sole officer of Amicorp. The mailing address on the Amicorp Account is the address of New Solomon as well as China Energy's Hong Kong address.
> On December 14, 2004, Defendant J. Zhao opened an individual account at Capital Growth Financial listing a Chiu business address as his business address on the account.
> The China Energy stock deposited in the Relief Defendant Accounts originated from Chiu's company Eurofaith.
> On September 9, 2005, the 544,477 shares of China Energy Relief Defendant Y. Zhao received from Eurofaith were deposited

in the Y. Zhao account. These are the only securities ever deposited in the Y. Zhao account.

On September 9, 2005, the 600,000 China Energy shares Essence City received from Eurofaith were deposited in the Essence City Account. These are the only securities ever deposited in the Essence City account.

On January 18, 2006, the 340,293 shares Amicorp received from Eurofaith through Yin Xiang Ge were deposited in the Amicorp Account. These are the only securities deposited in the Amicorp Account.

On December 20, 2005, the 100,000 shares Precise Power received from Eurofaith through Woopers.com, Inc. were deposited in the Precise Power Account. These are the only securities deposited into the Precise Power Account.

Steven Cao was a registered representative at Capital Growth Financial. In that capacity, Cao was the account representative for the Essence City, Precise Power, Y. Zhao and Amicorp Accounts (collectively, "Relief Defendant Accounts") and other accounts controlled by the Defendants.

The Relief Defendant Accounts were opened for the sole purpose of enabling each of the respective Relief Defendants to sell shares of China Energy that had been deposited in each of their respective accounts at Capital Growth Financial.

Between on or about October 10, 2005, and February 13, 2006, Cao sold all the China Energy shares deposited in each of the respective Relief Defendant Accounts as instructed by persons he believed to be the Relief Defendants. These sales resulted in the following proceeds: Essence City: $3,815,000.23; Precise Power: $749,171.43; Y. Zhao: $3,577,631.39; Amicorp: $2,445,982.47.

On January 20, 2006, Defendant J. Zhao [the sole principal of corporate Relief Defendant Precise Power] transferred proceeds from the sale of China Energy stock totaling 5 million Hong Kong Dollars to Chiu's Bank of China account. J. Zhao had received those proceeds on the same day from a brokerage account maintained under the name of He Wen Bo, which Chiu had described as a name he was using for China Energy shares.

14

Further, the Relief Defendants admit to the extent stated in the referenced exhibits that at the time the Relief Defendant Accounts were opened, Cao spoke by telephone with persons who purported to be Relief Defendants Tung Tsang and A. Zhong. Chui facilitated these conversations and participated in them. From time to time, Chui contacted Cao and discussed the Relief Defendant accounts with him and Chiu directed Cao to provide him with account statements and other materials for the Relief Defendant accounts. (*See* Pls. Exh. 8, 90 at ¶¶ 5, 11, and 14).

The salient denials make by the corporate Relief Defendants are denials that: (1) the Defendants exercised control over the Relief Defendant Accounts; (2) the Relief Defendants received their shares of China Energy stock from Chiu through Chiu's company Eurofaith; and (3) the record is devoid of any evidence regarding the consideration given by the Relief Defendants for their shares of China Energy other than the Forms 144 and the Relief Defendants' various declarations, which in material ways contradict one another. However, in denying these contentions, the corporate Relief Defendants rely upon the same first set of individual declarations that have already been determined to be unreliable first by this Court and then by Judge Tomlinson. (Pls. Exh. 95A–D).

Upon review of the evidence submitted by the SEC, as well as the admissions of the Relief Defendants, the court finds that Chiu controlled and directed sales of the stock in the Relief Defendant accounts. This individual has previously been adjudged

liable for fraud in connection with the sales of China Energy shares using these and other Capital Growth accounts. Indeed, the Court's March 28, 2008 Order, based upon Judge Tomlinson's recommendation, required the Defendants to disgorge some $28,859,710.41 in proceeds derived from sales of China Energy stock through the Capital Growth accounts of Amicorp, Essence City, Precise Power, and Y. Zhao, as well as New Solomon and Lai Fun Sim for the period of October 18, 2004 through February 15, 2006. Accordingly, the funds remaining in those accounts are ill-gotten as the accounts were used as part of Chiu's "pump and dump" scheme.

Further, the Relief Defendants have failed to establish a legitimate interest in the funds. Their present contention that the shares of China Energy stock were acquired as consideration for the sale of Starway is belied by the inconsistent statements made in their declarations as well as four Form 144 "Proposed Sale of Securities" statements filed with the SEC by China Energy. In these documents, China Energy claimed to have issued the shares in exchange for services rendered to it, rather than any other entity. (Pls. Exhs. 6, 7, 42, and 51). Further, the Relief Defendants have provided no documentary evidence in support of their claim of ownership of Starway or the alleged merger transaction. Accordingly, the Relief Defendants have failed to make any showing that the shares of China Energy were received in exchange for adequate consideration. *See CFTC v. Kimberlyn Creek Ranch*, 276 F.3d 187, 192 (4th Cir. 2002).

With respect to the amounts remaining in the accounts, the SEC contends that the following funds remain in each of the respective Relief Defendant accounts and comprise solely the proceeds from the sales of China Energy stock: Essence City: $226,558.75; Precise Power $749,171; Y. Zhao: $438,173; Amicorp: $2,445,982. The corporate Relief Defendants, without elaboration, deny that the amounts in the accounts are as stated by the plaintiff. In support of these amounts, the SEC submits the declaration of Steven Cao, which sets forth these amounts as remaining in the Relief Defendant accounts. (*See* Pls. Exh. 90 at ¶¶ 6, 8, 10, and 12).

However, the plaintiff has sought prejudgment interest without explaining the appropriateness of an interest award against relief persons or explaining the manner in which interest is to be calculated. Accordingly, the Court will grant summary judgment in favor of the plaintiff against the Relief Defendants, and will allow the parties an opportunity to brief the issue of interest.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the plaintiff's motion for summary judgment against the Relief Defendants is granted; and it is further

**ORDERED**, that the plaintiff's motion for disgorgement of the funds remaining in the Relief Defendants' accounts at Capital Growth Financial, namely the

Essence City, Precise Power, Amicorp, and Yan Hong Zhao accounts, is granted, and it is further

**ORDERED**, that on or before July 13, 2009, the plaintiff shall address in no more than five pages, its entitlement to a prejudgment interest award and its proposed calculation of any such interest award. Any opposition to the plaintiff's submission shall be filed on or before July 23, 2009.

**SO ORDERED**.

Dated: Central Islip, New York
July 6, 2009

                                                */s/ Arthur D. Spatt*
                                                ARTHUR D. SPATT
                                          United States District Judge